IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DRUMM,

          Plaintiff,

v.

MORNINGSTAR, INC.,

          Defendant.

NO. C08-3362 TEH

<u>ORDER GRANTING
DEFENDANT'S MOTION FOR
RECONSIDERATION ON
COMMISSION CLAIM</u>

This matter comes before the Court on Defendant Morningstar, Inc.'s motion for reconsideration of this Court's order denying Morningstar's motion for summary judgment on Plaintiff Michael Drumm's commission claim. Although the motion for reconsideration does not raise issues that could not have been raised at the time Morningstar filed its motion for summary judgment, the Court nonetheless exercises its discretion to revisit its summary judgment ruling on the commission claim. *See* Fed. R. Civ. P. 54(b) (providing that, absent entry of final judgment, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). For the reasons discussed below, and in the Court's October 1, 2009 Order Re: Pretrial Conference, the Court now GRANTS Morningstar's motion for reconsideration and GRANTS summary judgment to Morningstar on Drumm's commission claim.

As the Court explained in its October 1, 2009 Order, Drumm has not raised a breach of contract claim and instead presents only a claim for unpaid wages, including commissions, and waiting time penalties under California Labor Code sections 201 and 203. Whether a commission was due to Drumm is dependent on the commission policy between Drumm and Morningstar, Ex. T to Suppl. Resendes Decl. filed in support of Mot. for Summ. J.

California courts "have long recognized, and enforced, commission plans agreed to between employer and employee, applying fundamental contract principles to determine whether a salesperson has, or has not, earned a commission." *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1331 (2006).

While Drumm correctly observes that, in certain circumstances, an employee may be entitled to commission if he or she is the procuring cause of a sale, the Court is persuaded by Morningstar that the procuring cause theory does not apply in this instance, where the written contract governing commissions does not provide that a commission is earned by "procuring" a sale and, further, where the contract explicitly lists conditions precedent that must be satisfied before a commission is earned.

> "*If the contract contemplates that the agent shall receive compensation for sales of which the agent was the procuring cause*, the agent is entitled to a commission on sales procured by him although the sales were actually consummated by the principal after the termination of the agency." . . . "Where the services to be performed by the agent are severable, he may, *in the absence of contrary provision in the agency contract*, recover for services performed before the termination of the relationship."

*Zinn v. Ex-Cell-O Corp.*, 24 Cal. 2d 290, 296 (1944) (citing 3 C.J.S., Agency §§ 187, 189) (emphases added). The Ninth Circuit relied on this authority in a non-precedential decision finding that where, as here, a plan "specifically stated when a commission vested, the language of the Plan controls whether or not [an employee] is entitled to continuing commissions after [the employer] removed him from the [account]." *Schuman v. IKON Office Solutions, Inc.*, 232 Fed. Appx. 659, 662 (9th Cir. 2007). The Ninth Circuit also noted "the lack of legal support for using the procuring cause doctrine to contradict the express provisions of the Plan." *Id.*

Drumm has cited no authority to the contrary. Instead, in the cases he cites to support application of the procuring cause theory, the contracts at issue either specifically provided for commissions for sales "procured" by the employee or simply provided for commission on sales made by the employee or sold in the employee's region, with no inclusion of any specific conditions precedent. *See Wise v. Reeve Elecs., Inc.*, 183 Cal. App. 2d 4, 12-13

2

(1960) (oral agreement that plaintiff would receive commission on "all products of defendant sold" in a certain territory, with "no evidence as to the contractual terms of payment of commissions on solicitations by plaintiff prior to termination with respect to orders taken by the defendant after termination"); *Willson v. Turner Resilient Floors, Inc.*, 89 Cal. App. 2d 589, 591 (1949) (written agreement that plaintiff was to receive "twenty-five per cent (25%) of the gross profit realized by defendants from sales made or estimated by plaintiff"); *Chamberlain v. Abeles*, 88 Cal. App. 2d 291, 294-95 (1948) (oral agreement that plaintiff would "'use his time, efforts and business contacts in an effort to procure for defendants orders and manufacturing contracts . . .' and that defendants, in payment for such extra work and services by plaintiff, would pay to plaintiff, 'over and above his regular salary, a commission of five per cent (5%) of the net sales made by defendants to said companies on orders or contracts obtained by defendants from said companies'"); *Brea v. McGlashan*, 3 Cal. App. 2d 454, 465 (1934) (oral agreement that plaintiff would earn commission at a rate of "twenty-five per cent of the moneys received by [the defendant] from advertising procured by the plaintiff"). These cases are distinguishable on their facts and do not establish that the procuring cause theory may be relied on to circumvent written contractual conditions.[1] Thus, although whether Drumm was the procuring cause of the contract renewal with Schwab is a disputed factual issue, Aug. 24, 2009 Order Granting in Part & Denying in Part Def.'s Mot. for Summ. J. at 12-13, the Court now concludes that this dispute is not material and therefore does not prevent entry of summary judgment.

Drumm also characterizes the procuring cause theory as an application of the substantial performance doctrine, a fundamental contract principle ordinarily applied to construction contracts that allows recovery for work that has been substantially completed, minus a deduction for the value of any minor defects or omissions. *Murray's Iron Works, Inc. v. Boyce*, 158 Cal. App. 4th 1279, 1292-93 (2008) (citing *Thomas Haverty Co. v. Jones*,

---

[1]The non-case authority cited by Drumm relies on the cases discussed herein. *See* 3 Witkin, *Summary of California Law*, Agency & Employment § 121 (10th Ed. 2005) (citing *Chamberlain* and *Willson*); Cal. Div. Labor Stds. Enforcement ("DLSE") Enforcement Policies & Interpretations Manual § 34.6 (citing *Willson*, albeit mistakenly as *Willison*, and *Wise*).

3

185 Cal. 285, 288–89 (1921)). However, substantial performance is only applicable where there has been "no wilful departure from the terms of the contract," and the defects "may be easily remedied or compensated, so that the promisee may get practically what the contract calls for." *Posner v. Grunwald-Marx, Inc.*, 56 Cal. 2d 169, 187 (1961). In this case, it is undisputed that Diane Wein devoted between 400 and 500 hours to the Schwab contract renegotiation between October 2007 and January 2008; that the contract was only signed after Wein had exerted this effort; and that the existing contract with Schwab, set to expire on October 31, 2007, had to be extended through the end of the year as a stop-gap measure until the renegotiation could be completed. While disputing none of these facts, Drumm claims to have "completed all or substantially all of the Sales Director's tasks necessary to complete the Schwab transaction." Opp'n to Mot. for Summ. J. at 21. Although Drumm now argues that the conditions precedent to his earning the commission were "extremely trivial," comprising clerical tasks that could be completed in half an hour, Opp'n to Mot. for Recons. at 5, his omissions were not limited to wrapping up loose ends. Rather, the execution of the contract itself – one of the conditions required by the written policy prior to the award of any commission – was still months away from execution. *See* Ex. T to Suppl. Resendes Decl. at 3 ("The reps will be entitled to commissions for all contracts that are fully executed. . . ."). In fact, Drumm did not satisfy a single precondition to earning his commission. *See id.* Given the amount of work required to bring the Schwab renegotiation to a close following Drumm's removal, no reasonable jury could find that Drumm had substantially performed on the contract. Consequently, to the extent Drumm argues he is owed commission based on substantial performance, his claim fails as a matter of law.

Drumm also invokes the doctrine of prevention, under which "a party to a contract [who] prevents the fulfillment of a condition or its performance by the adverse party . . . cannot rely on such condition to defeat his liability." *Unruh v. Smith*, 123 Cal. App. 2d 431, 437 (1954). Drumm claims that Morningstar, by removing him from the Schwab account and terminating his employment, prevented him from consummating the Schwab deal, and that the company therefore cannot rely on Drumm's failure to obtain an executed agreement

4

to avoid paying him a commission. However, the prevention doctrine is inapplicable where "the preventing action is allowed under the contract." *Kline v. Johnson*, 121 Cal. App. 2d Supp. 851, 854 (1953). Termination of an employee is expressly contemplated by Morningstar's 2007 Data Institutional Sales Commission Plan, which bars any sales rep "whose employment is terminated by Morningstar" from receiving any commissions after termination. Ex. T to Suppl. Resendes Decl. at 5. Furthermore, Morningstar's offer letter to Drumm identified him as an "at-will employee" with no guarantee of "continued or permanent employment." Ex. 30 to Drumm Dep. at 1 (Ex. B to McGarrity Decl. filed in support of Mot. for Summ. J.). Finally, some California courts have held that prevention will excuse another party's failure to fulfill a condition only if the preventive act is wrongful or done in bad faith. *E.g.*, *Stone v. Carpenter*, 211 Cal. App. 2d 491, 496 (1963) (finding that a client who "wrongfully prevents the completion of the purposes for which the attorney was employed . . . remains obligated to compensate his attorney for the services rendered in accordance with the terms of the contract"); *Green v. Linn*, 210 Cal. App. 2d 762, 768 (1962) ("[G]ood faith was an implied term of the contract and that forbade the sellers acting in such manner as to frustrate the consummation of the deal."); *but see Rains v. Arnett*, 189 Cal. App. 2d 337, 347-48 (1961) (applying prevention doctrine without reference to good or bad faith). Here, the Court already concluded on summary judgment that Drumm could not rebut Morningstar's articulated rationale for terminating Drumm: that two clients had requested his removal from their accounts. Aug. 24, 2009 Order at 8-10. That rationale, which defeated Drumm's discrimination claim because it is facially nondiscriminatory, also evinces no bad faith for purposes of Drumm's commission claim. For all of the above reasons, the prevention doctrine is inapplicable to this case.

Finally, Drumm attempts to invoke the principle of unconscionability. However, this Court has already barred reliance on that theory because Drumm did not raise the argument until his opposition to Morningstar's motion for reconsideration. Oct. 1, 2009 Order Re: Pretrial Conf. at 1-2.

In short, none of the theories raised by Drumm is sufficient for Drumm's commission claim to survive summary judgment. Accordingly, IT IS HEREBY ORDERED that Morningstar's motion for reconsideration is GRANTED, and that summary judgment is GRANTED to Morningstar as to Drumm's commission claim. Thus, the only claim remaining for trial is Drumm's claim for unpaid vacation based on Morningstar's sabbatical policy.

In light of this order, IT IS FURTHER ORDERED that the parties shall meet and confer and resubmit their proposed jury instructions and verdict form. The revised proposed jury instructions and verdict form shall be filed on or before **October 15, 2009.** If the parties cannot reach full agreement, then they shall include in their filing any objections to the opposing party's proposals. The parties shall submit with their chambers copy of the above an electronic copy of all proposed instructions and verdict forms in WordPerfect or WordPerfect-compatible format.

The parties are also reminded that, if they wish to use electronic equipment during the trial, they must file a proposed order permitting counsel to bring specific equipment into the building. If counsel have any questions on the contents of such an order, or on the use of the courtroom's evidence presentation system, they may telephone the Court's courtroom deputy for clarification.

**IT IS SO ORDERED.**

Dated: 10/08/09

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT