IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DRUMM,

          Plaintiff,

v.

MORNINGSTAR, INC.,

          Defendant.

NO. C08-03362 TEH

ORDER DENYING MOTIONS FOR JUDGMENT AS A MATTER OF LAW

This matter is before the Court on the motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, made orally by Defendant Morningstar, Inc. and Plaintiff Michael Drumm on October 21 and October 22, 2009. The Court took both parties' motions under submission. The jury returned a verdict in favor of Mr. Drumm, concluding that the sabbatical policy at Morningstar is a vacation subject to California Labor Code section 227.3, and that Mr. Drumm had accrued 30 unused vacation days, for which he was owed $9,692.31. The jury also awarded an additional $9,692.31 in waiting time penalties.

For the reasons set forth below, both motions are DENIED.

**LEGAL STANDARD**

Rule 50(a) allows a party to move for judgment as a matter of law anytime before the case is submitted to the jury. Such a motion may be granted if, after the party opposing the motion "has been fully heard on an issue," the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). When the motion is not granted, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b).

"Motions for judgment as a matter of law in jury trials are governed under the same standard as summary judgment motions, albeit at a later stage of the proceeding." *Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, 273 F. Supp. 2d 1063, 1066 (N.D. Cal. 2003). In ruling on a Rule 50 motion after the jury has rendered a verdict, the Court must first "determine the correct law," and then "review the jury's factual findings to determine whether they are supported by substantial evidence." *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1092 (N.D. Cal. 2009). "A jury's verdict must be upheld if it is supported by substantial evidence," which "is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). Such a motion may also be made "on purely legal grounds," taking "the jury's findings at face value." *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996).

## DISCUSSION

### I. Plaintiff's Motion

Plaintiff moved the Court to rule in his favor as a matter of law, arguing that undisputed facts supported the conclusion that Morningstar's sabbatical plan was vacation, that Mr. Drumm used none of his sabbatical leave, and that Morningstar's failure to pay Mr. Drumm for his vested time upon termination was willful. Since the jury ruled in Plaintiff's favor on each of those questions, Plaintiff's motion is DENIED as moot.

### II. Defendant's Motion

Defendant argues that the Court should have concluded, as a matter of law, that Morningstar's sabbatical policy is not a vacation subject to section 227.3. Morningstar also objects to the jury instruction on this issue, which provided that a sabbatical is a vacation if it meets any one of four factors listed in a July 13, 1987 opinion letter by the California Division of Labor Standards Enforcement ("DLSE"), as well as in the DLSE's Enforcement Policies and Interpretations Manual ("Manual"). Defendant contends that the Manual is to

2

be given "no weight" because its failure to comply with the Administrative Procedure Act renders it "void." *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 576 (1996). According to Morningstar, the Court should have decided this question as a matter of law without resort to the four-prong test, which the DLSE developed to avoid having to assess sabbatical plans on a case-by-case basis – something Morningstar asserts is well within the competence of this Court.

In interpreting section 227.3, this Court "must determine what meaning the state's highest court would give to the law." *Bass v. County of Butte*, 458 F.3d 978, 981 (9th Cir. 2006). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). As Morningstar acknowledged, there is no state court decision clarifying whether a time-off policy characterized as a "sabbatical" by an employer falls under section 227.3. This Court is therefore charged with determining how the California Supreme Court would likely rule on this question.

The Court's analysis begins "with the statute's words, assigning them their usual and ordinary meanings, and construing them in context." *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1190 (2006). "If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs." *Id.* "If statutory language permits more than one reasonable interpretation, courts may consider extrinsic aids, including the purpose of the statute, the evils to be remedied, and public policy." *Prospect Med. Group, Inc. v. Northridge Emergency Med. Group*, 45 Cal. 4th 497, 507 (2009).

Section 227.3 provides that "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served[.]" Cal. Lab. Code § 227.3. Any dispute over vested vacation time is to be

3

resolved applying "the principles of equity and fairness." *Id.* At issue is the meaning of "vacation time": whether it is limited to traditional vacations, or also includes longer stretches of paid leave characterized by an employer as a "sabbatical." The statute never defines vacation, and offers few clues as to whether Morningstar's sabbatical policy would fall within the statute's mandate.

Although no California case law discusses section 227.3's applicability to sabbaticals, the California Supreme Court has offered guidance on the meaning of "vested vacation time." In *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774 (1982), the court explained that "it is important to keep in mind the nature of vacation pay" in "considering the meaning of the phrase 'vested vacation time' as used in section 227.3." *Id.* at 779. The court characterized "vacation pay" as "simply a form of deferred compensation," its purpose being "'to offer a reward of additional wages for constant and continuous service.'" *Id.* at 780 (quoting *Posner v. Grunwald-Marx, Inc.*, 56 Cal. 2d 169, 186 (1961)). Vacation pay is, in this respect, "similar to pension or retirement benefits, another form of deferred compensation," which "'do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee.'" *Id.* (quoting *In re Marriage of Fithian*, 10 Cal. 3d 592, 596 (1974)).

Morningstar's sabbatical plan is consistent with the characterization of "vacation" in *Suastez*. In its offer letter to Mr. Drumm, Morningstar touted its "generous paid time-off programs" as part of its "excellent package" of benefits. Def.'s Ex. U, at 2. An attachment to the offer letter, titled "Morningstar's Benefit Description," characterizes the sabbatical as follows:

> After four years of full-time employment at Morningstar, you can take six weeks paid leave to explore, experiment, or pursue any interest for which you could otherwise never find the time. What you do is up to you. We see the sabbatical as a way of saying thanks for helping us grow, and as a way to help you grow.

*Id.* at 4. This sabbatical program shares many features of a "vacation" as described by the California Supreme Court. It is "part of the consideration earned by the employee," *Suastez*, 31 Cal. 3d at 780, *i.e.* consideration for "four years of full-time employment at Morningstar."

4

As such, it constitutes "deferred compensation." *Id.* Furthermore, the sabbatical is a benefit presented in the employment offer and therefore constitutes a component of the total compensation plan. Finally, Morningstar vice president for human resources Melia Kimura testified that the sabbatical policy was implemented "to reward employees for their continued dedication to the company," Reps.' Tr. 10/21/09, at 71:13-17, much the way the California Supreme Court described vacation as "a reward . . . for constant and continuous service," *Suastez*, 31 Cal. 3d at 780.

However, neither *Suastez* nor any other California case addresses whether section 227.3's mandate with respect to "paid vacations" would apply to a "paid leave" under Morningstar's sabbatical policy. This question has been addressed by the DLSE, which has delineated narrow circumstances under which a sabbatical policy would *not* fall under section 227.3's mandate. The DLSE's position evolved over the course of three opinion letters dated December 13, 1986 (providing that "each case will have to be decided on its own facts"); July 13, 1987 (setting forth the four criteria that a sabbatical must meet *not* to be subject to section 227.3); and October 6, 1987 (creating an exception "for firms which had a policy that antedated *Suastez* and which historically offered sabbatical leaves to employees other than high level managerial professionals"). The standard adopted by the DLSE to assess sabbaticals under section 227.3 is a four-prong test:

> [I]n order for a sabbatical not to be subject to S 227.3 and *Suastez*, the following criteria must be met. The sabbatical must be for an extended period of time beyond what is normally granted for vacation. It cannot replace or displace the vacation normally earned each year but must be in addition to a regular vacation program. Sabbatical leave may only be provided to high level managers and professionals in advanced fields. Finally, sabbatical leave should be granted infrequently, such as every 7 years, though in certain circumstances a shorter period may be acceptable.

DLSE Opinion Letter, 7/13/87. A version of the same test also appears at section 15.1.13 of the DLSE's Manual. The standard evolved, according to the last of the letters on this issue, because "the chances for avoiding *Suastez* are too great, and the difficulty of consistent

enforcement too obvious, to warrant a case-by-case analysis." DLSE Opinion Letter, 10/6/87.

> A sabbatical policy only gives rise to vested vacation time under the policy when any of the following is true:
> 1. The sabbatical leave is for a short period of time, similar to that which is normally granted for vacation;
> 2. The sabbatical leave replaces or displaces earned vacation;
> 3. The sabbatical leave is granted more frequently than once every number of years; or
> 4. The sabbatical leave is available to more employees than high-level managers and professionals in advanced fields.
>
> If any one (or more) of the above is true, you must find that defendant's sabbatical policy was a vacation plan. If none of the above is true, you must find that defendant's sabbatical policy was a sabbatical, and your verdict should be for defendant.

The DLSE's guidance was the basis for the jury instruction on this issue:

Instruction No. 22. After hearing this instruction, the jury concluded that Morningstar's sabbatical policy does give rise to vested vacation time.

Defendant argues that it was improper for the Court to place any reliance on DLSE policies in interpreting section 227.3. Morningstar is correct that the Manual does not carry the force of law and is not binding, because the policies contained therein are "regulations that [are] void because they [were] not . . . promulgated in compliance with the Administrative Procedure Act." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 563 (2007) (citing *Tidewater*, 14 Cal. 4th at 572). However, "[u]nlike interpretive policies contained in the [Manual], advice letters are not subject to the rulemaking provisions of the APA." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000). Thus the opinion letters, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1334 n.7 (2006) (quoting *Yamaha Corp. of Am. v. State Bd. Of Equalization*, 19 Cal. 4th 1, 14 (1998)).

The issue is not whether the opinion letters bind this Court, but rather how much weight they may carry in the absence of binding authority. The California Supreme Court

observed this year that "[c]onsistent administrative construction of a statute, especially when it originates with an agency that is charged with putting the statutory machinery into effect, is accorded great weight." *Ste. Marie v. Riverside County Regional Park & Open-Space Dist.*, 46 Cal. 4th 282, 292 (2009) (internal citations omitted). That the interpretation at issue here takes the form of an opinion letter does not rob it of all authority:

> Significant factors to consider include whether the administrative interpretation has been formally adopted by the agency or is instead in the form of an advice letter from a single staff member, and whether the interpretation is long-standing and has been consistently maintained. Such deference is also appropriate for practical reasons: "When an administrative interpretation is of long standing and has remained uniform, it is likely that numerous transactions have been entered into in reliance thereon, and it could be invalidated only at the cost of major readjustments and extensive litigation."

*Id.* at 292-93 (internal citations omitted). While an opinion letter carries less weight than a formally adopted interpretation, a letter of longstanding duration is more authoritative than one of more recent vintage. The opinion letters at issue here have been in place for more than two decades, and may therefore – under *Ste. Marie* – be accorded some weight.[1]

The opinion letters provide persuasive authority for distinguishing between vacation and sabbatical leave. When section 227.3 was adopted in 1972, the legislature likely did not intend it to apply to the "traditional sabbatical arrangement (i.e., 4 months off after 7 years)" historically offered to academics, DLSE Opinion Letter, 12/13/86, which would not have been considered "vacation" within the ordinary meaning of the term. However, sabbatical policies like that at Morningstar – which the company began offering in 1993, two decades after the passage of section 227.3 – blur the line between traditional sabbaticals and vacations. Indeed, the DLSE observed that the definition of sabbatical – "a leave of absence with pay for 'travel, research, or rest'" – "could also be applied to a vacation." DLSE Opinion Letter, 7/13/87. The DLSE therefore listed characteristics of a traditional sabbatical

---

[1] The U.S. Supreme Court has held, in the context of federal administrative law, that "interpretations contained in formats such as opinion letters are 'entitled to respect' . . . but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

7

that distinguish it from a vacation, and required that *all* of the criteria be met "for a sabbatical not to be subject to" section 227.3. *Id.* A sabbatical that met only some of the criteria was not sufficiently distinct from vacation to excuse compliance with section 227.3. Only if a policy hues closely to the traditional conception of sabbatical will it not be subject to the statute.

Morningstar's argument that the opinion letters carry no weight is, at the very least, disingenuous. Morningstar relied on DLSE opinion letters in drafting its own proposed jury instruction on sabbatical leave, which included a version of the DLSE's four-prong test and would have instructed the jury – drawing language from an opinion letter – to classify as vacation any "sabbatical" so named as a "subterfuge" to avoid section 227.3.[2] *See* Def.'s Proposed Instruction No. 3, Dkt. No. 114. Both parties based their proposed jury instructions on DLSE opinion letters, and appeared to be in agreement – until Defendant's Rule 50 motion – that reliance on DLSE policies was appropriate.[3]

Although not bound by the DLSE's standards, the Court adopted them as a persuasive application of section 227.3 to a sabbatical plan. Section 227.3 treats vacation pay as "wages," which "are jealously protected by statutes for the benefit of employees." *Boothby v. Atlas Mech., Inc.*, 6 Cal. App. 4th 1595, 1601 (1992). Only a leave policy that is truly distinct from vacation should be relieved from such protection. The applicability of section 227.3 should hinge not on an employer's semantic choices, but on objective criteria. The DLSE adopted such criteria, requiring that a sabbatical be something more than a longer, less-frequent variant on vacation to avoid section 227.3. The DLSE's criteria have been in place for more than two decades, and employers are likely to have relied on its guidance with

---

[2] Morningstar would have instructed the jury that a sabbatical policy "only gives rise to vested vacation time under the policy when the sabbatical is a subterfuge for vacation." Defendant's Proposed Instruction No. 3, Dkt. No. 114. This suggests that the applicability of section 227.3 hinges on the employer's intent to avoid the statute. The key inquiry should be whether the "sabbatical" possesses the objective characteristics of a sabbatical – which would justify differential treatment – and not the employer's subjective rationale in adopting the term.

[3] Morningstar had raised its argument at least once prior to the Rule 50 motion, objecting to Plaintiff's proposed jury instructions on the basis that the DLSE policies "are not binding on this Court." Def.'s Objs. to Pl.'s Proposed Jury Instructions, Dkt. No. 115, at 4.

respect to their own time-off policies. As such, the Court did not err in instructing the jury based on the DLSE standards. Furthermore, whether Morningstar's policy fit the characteristics of a vacation was a question of fact that the Court properly allowed the jury to decide, as was the issue of whether Morningstar willfully failed to pay Mr. Drumm wages owed upon his termination.

Defendant's motion for judgment as a matter of law is DENIED.

**IT IS SO ORDERED.**

Dated: 11/05/09

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT