IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DRUMM,

          Plaintiff,

v.

MORNINGSTAR, INC.,

          Defendant.

NO. C08-03362 TEH

<u>ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S RULE 59(e)
MOTION; GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR
ATTORNEY'S FEES; AND
DENYING DEFENDANT'S
MOTION FOR ATTORNEY'S
FEES.</u>

This matter came before the court on February 1, 2010 on three motions. Plaintiff Michael Drumm ("Drumm") moves pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment entered on November 13, 2009, and moves for an award of attorney's fees and costs. Defendant Morningstar, Inc. ("Morningstar") likewise moves for attorney's fees. For the reasons set forth below, Drumm's Rule 59(e) motion is GRANTED IN PART and DENIED IN PART. Drumm's motion for attorney's fees and costs is GRANTED IN PART and DENIED IN PART, and Morningstar's motion is DENIED.

**BACKGROUND**

Drumm filed this lawsuit after he was terminated from his position as a sales director at Morningstar. Drumm alleged that he was improperly terminated on the basis of sexual orientation in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940. His complaint asserted three causes of action premised on his allegedly discriminatory firing: discrimination, failure to take reasonable steps to prevent discrimination, and termination in violation of public policy. Drumm also brought a fourth claim for failure to pay wages earned upon discharge, based on unpaid commissions and

vested but unused vacation time under Morningstar's "time off" policy and its "sabbatical" policy.

The Court dismissed the three discrimination claims, as well as the part of the fourth claim based on Morningstar's time off policy, on summary judgment. On Morningstar's motion for reconsideration of that ruling, the Court also dismissed Drumm's claim for unpaid commissions. All that remained to be tried was the last portion of Drumm's fourth cause of action, for Morningstar's failure to pay out vested vacation time for a six-week "sabbatical" that he never took, and waiting time penalties based on those unpaid wages.

After a three-day trial held from October 20 to 22, 2009, the jury returned a verdict for Drumm, awarding him $9,692.31 in unpaid wages for 30 days of accrued but unused vacation time under Morningstar's sabbatical policy, and an additional $9,692.31 in waiting time penalties. The Court denied motions for directed verdict from both parties. In its Judgment entered on November 13, 2009, the Court imposed pre-judgment interest on the unpaid wages but not the waiting time penalties. Drumm subsequently moved to alter or amend the judgment, and both parties moved for an award of attorney's fees.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 59(e) allows a motion to alter or amend a judgment to be made "no later than 28 days after the entry of the judgment." Although the rule prescribes no standards for such a motion, the Ninth Circuit has annunciated four grounds upon which a Rule 59(e) motion may be granted: "1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law." *Turner v. Burlington Northern Santa Fe R.R.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (internal citations and quotation marks omitted). "A district court has considerable discretion when considering" such a motion. *Id.* "Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and

conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal citation and quotation marks omitted).

To determine "whether a party is entitled to attorneys' fees" in "an action involving state law claims," the law of the forum state is applied "unless it conflicts with a valid federal statute or procedural rule." *MRO Commc'ns, Inc. v. AT&T Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999); *see also Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000) ("A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys" fees.). California law therefore governs the motions for attorney's fees of both Drumm (for his state law sabbatical claim) and Morningstar (for Drumm's discrimination claims).

The awarding of attorney's fees is "mandatory" in unpaid wage claims. *Earley v. Superior Court*, 79 Cal. App. 4th 1420, 1427 (2000). "In any action brought for the nonpayment of wages, . . . the court *shall* award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." Cal. Lab. Code § 218.5 (emphasis added). Drumm's motion for attorney's fees, based on the favorable jury verdict on his unpaid wage claim, is governed by this standard.

Morningstar bases its motion for attorney's fees on having prevailed in the discrimination claims. In a FEHA action, "the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs." Cal. Gov. Code § 12965(b). A prevailing defendant "should be awarded attorney fees 'not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious.'" *Bond v. Pulsar Video Prods.*, 50 Cal. App. 4th 918, 921-22 (1996) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). That "the plaintiff ultimately lost" is not reason enough; the claim would have to be "groundless or without foundation," although the defendant need not show any "subjective bad faith" to be entitled to attorney's fees. *Id.* at 922.

3

# DISCUSSION

## I. Drumm's Motion to Alter or Amend Judgment[1]

Only one of the four grounds for granting a Rule 59(e) motion is at issue here: to "correct manifest errors of law or fact upon which the judgment is based." *Turner*, 338 F.3d at 1063. Drumm raises two alleged errors in the Court's judgment. First, he disputes the jury's calculation of waiting time penalties, arguing that the award should have been based on Drumm's overall year 2007 compensation of $410,589, rather than his base salary alone. Second, Drumm contends that prejudgment interest should have been awarded on the waiting time penalties.

### A. Calculation of Waiting Time Penalties

Where an employer "willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a). The so-called "waiting time penalty" is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998). The "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days." *Id.* "Wages" include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Lab. Code § 200(a).

Although the waiting time penalty was *triggered* by Morningstar's failure to pay Drumm for his unused vacation, the waiting time penalty and vacation pay are distinct

---

[1] Drumm also moves the Court, in the alternative, to grant his motion for judgment as a matter of law under Rule 50. Drumm's counsel made this motion orally on October 22, 2009, and the Court denied it by written order on November 5, finding it moot given the jury's verdict in Drumm's favor. As the Rule 59(e) motion is an appropriate vehicle to assess any errors in the jury's verdict, there is no need for the Court to reconsider Drumm's Rule 50 motion.

4

calculations. Section 203(a) requires that the "wages of the employee" continue when an employer willfully fails to pay wages owed. As the California Division of Labor Standards Enforcement ("DLSE") explained in an opinion letter, the "wages of the employee" should "include all of the wages – the base rate, the piece rate, the commission and any bonus." DLSE 1/28/03 Opinion Letter, at 2 (citing Cal. Lab. Code § 200). "To eliminate any of the wages would not serve the public policy which the *Mamika* court concluded underlies the penalty, i.e., the imposition of the 'larger penalty [which] acts as a disincentive to employers who are reluctant to pay wages in a timely manner." *Id.* (quoting *Mamika*, 68 Cal. App. 4th at 493).

Vested vacation time, on the other hand, is paid out "as wages at [the employee's] final rate in accordance with such contract of employment or employer policy respecting eligibility or time served." Cal. Lab. Code § 227.3. An employer must, in other words, pay out vested vacation time at the rate at which the employee would have been paid during a vacation, had he taken one. "The law directs the Labor Commissioner to enforce the 'contract of employment or employer policy' with respect to vacation pay," which is typically "based on the wage paid to the worker on a regular basis." DLSE 1/28/03 Opinion Letter, at 2. Such was the case at Morningstar: Melia Kimura, a vice president of human resources at the company, testified that Drumm would have received six weeks of base salary during his six weeks of sabbatical, had he taken it. 10/21/09 Tr. at 89.

The jury heard separate instructions on calculating "wages due for vested vacation time" and the waiting time penalty. For vested vacation time, the "amount of wages" owed to Drumm was to be "based on his final rate," which is "the rate of pay in effect at the time of his termination – i.e., the rate at which his vacation time would have been paid had he taken it." Instr. No. 24 (Dkt. 136). The waiting time penalty was to be derived from Drumm's "daily wage," the calculation of which was set out as follows:

> The "waiting time" penalty is calculated by dividing the employee's annual wages by 52 weeks, dividing the resulting figure by 40 hours to obtain an hourly rate, multiplying the hourly rate by eight to obtain a daily wage, and then multiplying the daily wage by the number of days (up to a maximum of 30)

5

> that defendant failed to pay his wages when they came due. "Annual wages" means the wages that an employee would have been paid had the employee worked for a full year. As I have already instructed you, the term "wages" includes all amounts for labor performed by an employee, whether the amount is calculated by time, task, piece, commission, or some other method.

Instr. No. 26 (Dkt. 136).

The jury, during deliberations, submitted a note requesting a breakdown of Drumm's earnings in 2007 as to base pay, commissions, and bonus. The parties concurred in the Court's response: "Base Pay – $84,000 annually. Commission – $130,000. Bonuses – $7,500." Jury Note No. 1 (Dkt. 139). As a result, the jury did not need to make any factual findings as to the amount or breakdown of Drumm's earnings. In its verdict, the jury concluded that Drumm was owed 30 days of vacation pay, which it set at $9,692.31. The jury also imposed the maximum 30 days of waiting time penalty, and awarded the same amount – $9,692.31 – as it did for vacation pay.

Given the precise jury instructions for the waiting time penalty, it is apparent that the jury based that calculation on Drumm's base salary alone. The jury divided $84,000 by 52 and again by 40 to yield an hourly wage which – multiplied by 8 – resulted in a daily wage. After multiplying that figure by 30 days, the jury arrived at its verdict of $9,692.31.

Although this result is proper for the payment of Drumm's vested vacation time, which is derived from his "final rate" or base salary, the waiting time penalty should have been based on Drumm's "annual wages," including his commission and bonus.[2] There was no factual dispute as to whether Drumm had earned a commission and a bonus in addition to his base salary, nor was there any question as to the amount of these figures.[3] Once the jury

---

[2] Morningstar argues that it was proper for the jury to base the waiting time penalties exclusively on Drumm's salary, because that was the only component of his wages that Morningstar refused to pay. Section 203 of the California Labor Code provides that "the wages of the employee shall continue as a penalty" when "any wages" are willfully withheld, and *Mamika* specifies that "the wages" refers to the plaintiff's "daily wages." 68 Cal. App. 4th at 493. Morningstar's assertion that only the *withheld* wages continue as the waiting time penalty is therefore incorrect.

[3] Morningstar's argument that granting Drumm's Rule 59(e) motion would violate its right to a jury trial is therefore disingenuous, as the only facts necessary to make the waiting time calculation were stipulated to by the parties.

had decided to impose a waiting time penalty of 30 days, the law required the jury to calculate that penalty based on the statutory definition of wages. Its failure to do so constitutes a clear error that the Court may, at its discretion, correct on Drumm's Rule 59(e) motion.

Drumm's argument goes even further, however. He asserts that the proper figure for computing his daily rate was his overall year 2007 compensation of $410,589. Although Drumm's motion never breaks down that figure, Kimura testified at trial that "$410,000 and change" was the "gross pay" listed on Drumm's year 2007 W-2 tax form. 10/21/09 Tr. at 86-87. His gross pay includes $70,000 in salary (the fraction of his base salary paid "up until the date of his employment termination"), commission of "just under $130,000," a bonus of "just under $7,500," stock options of $180,000, and "approximately $23,000" in expense reimbursements. *Id.* at 87-88. Drumm himself testified that in the year 2007, he twice exercised stock options that Morningstar had given him over the course of his employment. *Id.* at 45-46. Drumm therefore contends that his "daily wage" should include $180,000 in stock options and $23,000 in expense reimbursements, in addition to base salary, commission, and bonus.

Drumm cites *Schachter v. Citigroup, Inc.* for the proposition that "shares of restricted stock issued to" an employee "constituted a wage." 47 Cal. 4th 610, 619 (2009). The defendant in *Schachter* offered employees the option "to receive awards of restricted company stock 'in lieu of cash payment of a percentage of the employee's annual compensation,'" which would only fully vest with the employee after two years. *Id.* at 614-15. An employee who quit before his shares had vested would "forfeit[] his or her restricted stock as well as the percentage of annual income designated by the employee to be paid as shares of restricted stock." *Id.* at 615. The *Schachter* plaintiff, who had left the company before his shares had vested, alleged that this money was owed to him as unpaid wages under California law. The Court, while acknowledging in dicta that "the shares of restricted stock issued to [plaintiff] constituted a wage," upheld the employer's plan. *Id.* at 619.

*Schachter* does not dictate that Drumm's exercised stock options be included in the waiting time penalty, for two reasons. First, *Schachter* did not address whether stock options constitute wages for purposes of computing a waiting time penalty; it was concerned only with the validity of a policy in which an employee could forfeit wages earned as shares of restricted stock. Second, the stock options at issue here were not earned in 2007; they were *exercised* in 2007. Drumm accumulated the stock options during six years of employment with Morningstar; no where does he demonstrate that any of the stock options were awarded "for labor performed" during the year on which the penalty calculation is based. *See* Cal. Lab. Code § 200(a). The stock options therefore cannot be part of his "annual wages" for that purpose. Similarly, expense reimbursements are not "amounts for labor performed," *id.*, and are not appropriately part of the calculation.[4]

Drumm also contests the jury instruction on the waiting time penalty, arguing that 52 weeks was an inappropriate divisor for calculating his daily wage. Since his employment was terminated on November 1, 2007, Drumm worked only 43 weeks of the year, and contends that 43 is the correct divisor. This argument is unfounded. The jury relied on Drumm's *annual* salary of $84,000 to calculate the waiting time penalty, rather than the $70,000 that he had earned in 2007 before his termination. Furthermore, Kimura testified that, even had Drumm remained in Morningstar's employment through the end of 2007, he would not have earned any additional commissions or bonuses, as they were not to be paid until early 2008. *See* 10/21/09 Tr. at 87-88. Therefore, Drumm's commission and bonus represent earnings over an entire 52-week calendar year, and there is no basis for altering the divisor.

The correct calculation of Drumm's waiting time penalty should be based on his base salary, commissions, and bonus. Following the methodology set out in the jury instructions,[5]

---

[4] Morningstar further argues that *Schachter* is inapplicable because it dealt with actual registered securities, rather than the *option* to buy stock. Since the Court finds *Schachter* inapplicable on other grounds, there is no need to address this point of distinction.

[5] Drumm's annual wages were $221,500 ($84,000 + $130,000 + $7,500). $221,500 ÷ 52 ÷ 40 x 8 x 30 = $25,557.69.

8

Drumm is owed a waiting time penalty of $25,557.69. Drumm's Rule 59(e) motion is GRANTED IN PART, and the judgment SHALL be amended accordingly.

**B.      Pre-Judgment Interest**

The Court imposed pre-judgment interest on the jury's award of vacation pay, but not on the waiting time penalty. Drumm contends that pre-judgment interest should have been applied to both. Drumm relies on California Civil Code section 3287, which provides that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day." Since the waiting time penalty is capable of being made certain and vested on a particular day, Drumm argues that it falls squarely within section 3287.

The Court disagrees. The purpose of prejudgment interest "is to provide just compensation to the injured party for loss of use of the award during the prejudgment period – in other words, to make the plaintiff whole as of the date of the injury." *Lakin v. Watkins Associated Indus.*, 6 Cal. 4th 644, 663 (1993). This rationale applies to unpaid wages: prejudgment interest compensates an employee for loss of use of the amount owed. Indeed, the California Labor Code explicitly provides for prejudgment interest in "any action brought for the nonpayment of wages." Cal. Lab. Code § 218.6. However, that same "end would not be served by awarding prejudgment interest on punitive damages," which "are not intended to make the plaintiff whole by compensating for a loss suffered." *Lakin*, 6 Cal. 4th at 664. The waiting time penalty, like a punitive damage award, is designed not to make employees whole, but to act "as a disincentive to employers who are reluctant to pay wages in a timely manner." *Mamika*, 68 Cal. App. 4th at 493. Awarding prejudgment interest would "give a windfall" to plaintiffs, *Lakin*, 6 Cal. 4th at 664, and does not fall within the mandate of section 3287.[6] Plaintiff's Rule 59(e) motion is DENIED IN PART as to this issue.

---

[6] Drumm's reliance on *County of Solano v. Lionsgate Corp.* is misplaced. There, the court found a party entitled to prejudgment interest as of the date of a final arbitration award, because the "award itself became a contractual obligation at that point." 126 Cal. App. 4th

9

**II. Drumm's Motion for Attorney's Fees**

In an action for unpaid wages, "the court *shall* award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." Cal. Lab. Code § 218.5 (emphasis added). An award of reasonable attorney's fees to the prevailing party is mandatory. Drumm requested attorney's fees upon initiation of the action, prevailed on the sabbatical claim for unpaid wages, and now seeks $80,830 in fees.

At hearing, the Court expressed dissatisfaction with the level of detail contained in Drumm's motion for attorney's fees.[7] In response, Drumm's counsel William Gaus filed a supplemental declaration, attaching billing records that document the basis for the fee request. Drumm requests fees for work performed by four attorneys and one legal assistant at the law firm of Dillingham & Murphy, LLP: Gaus ($375/hour); Barbara Harris Chiang ($300/hour); Angel Sevilla ($225/hour); Andrea Fellion ($225/hour); and Lisa Green ($100/hour). The $80,830 fee is broken down into four categories: (1) review of documents, $24.832.50; (2) preparation for and attendance at depositions, $10,875; (3) immediate trial preparation and trial, $43,360; and (4) preparation of case management and pretrial conference materials, $1,762.50.

Morningstar does not dispute that Drumm is the prevailing party on the unpaid wage claim, but argues only that the fees sought are unreasonable. "California law commits the determination of reasonable attorneys' fees to the discretion of the trial courts." *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 609 (9th Cir. 2000). To assess reasonable attorney fees, a court begins "with a touchstone or lodestar figure, based on the 'careful compilation of the

---

741, 753. The waiting time penalty is not a contractual obligation. Likewise, the California Supreme Court in *Currie v. Workers' Comp. Appeals Board* allowed prejudgment interest on "awards reimbursing employees for *lost wages* and work benefits," not waiting time penalties. 24 Cal. 4th 1109, 1119 (2001) (emphasis added).

[7] Under California law, "[a]n attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." *Steiny & Co. v. Cal. Elec. Supply Co.*, 79 Cal. App. 4th 285, 293 (2000). This Court requested additional documentation to distinguish work done to support the sabbatical claim from work on claims that were ultimately dismissed.

10

time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.'" *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001) (quoting *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977)).[8] "[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Id.* at 1132. A trial court may "reduce the award or deny one altogether" if the fee request "appears unreasonably inflated." *Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982); *see also PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (allowing for an adjustment of the lodestar figure, "based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided"). Although reasonable fees are not measured as "a percentage of the plaintiff's recovery," *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998), "under state law as well as federal law, a reduced fee award is appropriate when a claimant achieves only limited success," *Sokolow v. County of San Mateo*, 213 Cal. App. 3d 231, 249 (1989).

Morningstar argues that no attorney's fees should be awarded, because Drumm's recovery fell within the $25,000 amount-in-controversy threshold for a limited civil case in California superior court, where streamlined proceedings would have made the litigation far less costly. Morningstar urges this Court to follow *Chavez v. City of Los Angeles*, in which the California Supreme Court held that a trial court properly denied attorney's fees when the prevailing plaintiff on a FEHA claim recovered "an amount that could have been recovered in a limited civil case." 47 Cal. 4th 970, 976 (2010). That decision hinged on an examination of the "proper interaction of two statutory provisions": section 1033(a) of the California Code of Civil Procedure, and section 12965(b) of the California Government Code. Section 1033(a) "gives the trial court discretion to deny, in whole or in part, the plaintiff's recovery of litigation costs" where "'the prevailing party recovers a judgment that could have been rendered in a limited civil case,' and the action was not brought as a limited civil case." *Chavez*, 47 Cal. 4th at 975, 982-83 (quoting Cal. Code Civ. Proc. § 1033(a)).

---

[8] Morningstar does not dispute the hourly rates used by Drumm in his calculations, which the Court concludes are reasonable.

11

Attorney's fees in FEHA actions are governed by section 12965(b), which provides that a court, "*in its discretion*, may award to the prevailing party reasonable attorney's fees and costs." Cal. Gov. Code § 12965(b) (emphasis added). *Chavez* held only that section 1033(a) "applies to actions asserting FEHA claims," 47 Cal. 4th at 989, which is irrelevant to the *unpaid wage* claim on which Drumm prevailed. Nor is *Chavez* applicable by analogy: attorney's fees in FEHA claims are subject to the trial court's discretion, whereas in unpaid wage actions they are mandatory. Unlike the trial court in *Chavez*, this Court does not have discretion to deny attorney's fees in their entirety.

Morningstar also claims the bulk of attorney's fees in this case are based on the litigation of Drumm's discrimination and commission claims, which were dismissed shortly before trial. For example, Morningstar points out that none of Drumm's discovery requests or deposition questions related to sabbatical leave, and only one paragraph of Drumm's 24-page summary judgment opposition addressed the sabbatical claim.[9] Drumm's counsel William Gaus attests that "time spent on other causes of action was not counted, unless the time was also relevant to the cause of action on which Plaintiff prevailed." Supp'l Gaus Dec. (Dkt. 205) ¶ 3. As a result, Gaus explains, he has already excluded time spent on the summary judgment motion, depositions of witnesses who did not testify, and the review of documents related to the Charles Schwab transaction.

Gaus's supplemental declaration supports his contention. In addition to billing records for the attorney fees being sought, Gaus provides his law firm's *total* billings for this matter, which amount to $390,570 – five times the $80,830 claimed for the unpaid wage claim alone. Although Morningstar flags specific time entries as problematic – for example, those dated August 12, 2008 ("reviews documents") and December 1, 2008 ("prepare for depositions") – Drumm is not requesting fees for those entries, which appear among the total

---

[9] Morningstar also flags inconsistencies between Gaus's original and supplemental declarations: the amount of the fee request increased by $10 (from $80,820 to $80,830) and a fourth attorney, Angel Sevilla, was added to the timekeepers in the supplemental declaration. The Court does not consider these issues to be material. The supplemental declaration is supported by – and consistent with – the attached billing records.

12

billings, not the fees being claimed. It is clear that the fee request reflects an effort to segregate the sabbatical claim from the unsuccessful claims.

Whether or not those fees are reasonable is a separate inquiry. More than half of the attorney's fees sought by Drumm are for trial preparation and the trial itself. In a joint pretrial statement filed on September 25, 2009, Drumm had proposed that the sabbatical claim "be decided by the Court in a summary proceeding through the submission of declarations." Joint Pretrial Statement (Dkt.72), at 10. Morningstar objected to this approach and demanded that "any remaining claims be decided by live testimony." *Id.* Although the summary procedure proposed by Drumm would have been more efficient, going to trial on the one remaining claim was not unreasonable given Morningstar's rejection of the proposed alternative. The Court finds the $43,360 in attorney's fees associated with the trial, and $1,762.50 for the preparation of case management and pretrial conference materials, to be reasonable.[10]

Drumm also requests $24,832.50 for document review, and $10,875 to cover the preparation for and attendance at the depositions of the three witnesses who appeared at trial: Drumm; his supervisor, Connie Resendes; and Melia Kimura, a Morningstar human resources executive. Morningstar contends that such discovery cannot be attributed to the sabbatical claim, as "Drumm never made a single written discovery request related to sabbatical leave and did not ask any of the ten individuals he deposed during discovery a single question regarding sabbaticals." Def.'s Resp. to Pl.'s Mot. for Att'ys' Fees (Dkt. 186), at 1. Drumm never refutes that argument, failing to cite any discovery request or deposition question made to support the sabbatical claim. The Court therefore credits Morningstar's contention that discovery was dedicated to the discrimination and commission claims, and not the sabbatical claim.

---

[10] Morningstar contends that the fees sought for trial and trial preparation are exaggerated, in that "much of Drumm's pretrial preparation related to his commissions claims." Def.'s Resp. to Supp. Gaus Dec. (Dkt. 206), at 2. However, nearly all of the time entries for trial preparation are dated on or after October 8, 2009, the date the Court dismissed the commissions claim. Drumm's fee request therefore does not appear to include any trial preparation related to that claim.

13

Preparing the sabbatical claim for trial required very little discovery. There was no dispute that the sabbatical policy provided for six weeks of paid leave after four years' employment, or that Morningstar never paid Drumm for unused sabbatical time upon his termination after six years with the company. For Morningstar's sabbatical to constitute vacation under California law, Drumm had to prove that "the sabbatical leave is available to more employees than high-level managers and professionals in advanced fields." Jury Instr. No. 22 (Dkt. 136). As Gaus argued in closing, the sabbatical policy itself – as well as the testimony of Drumm and Kimura – established the availability of sabbatical to all company employees. Drumm fails to demonstrate that any depositions or written discovery were necessary to elicit these facts at trial; engaging in extensive discovery to support the sabbatical claim would not have been reasonable.

That is not to say, however, that *no* discovery was necessary to prepare for trial of the sabbatical claim. Morningstar relied on Drumm's emails and Outlook calendar to argue that he "took his sabbatical on the sly" without requesting permission. 10/22 Tr. at 33. Drumm contends, and the Court agrees, that the rebuttal of Morningstar's assertions about Drumm's performance and time off did require the dedication of attorney hours to discovery.[11]

Determining the appropriate fee award for such limited discovery will inevitably be imprecise. Drumm is entitled to attorney's fees for the amount of discovery that was reasonably necessary to rebut Morningstar's defense of the sabbatical claim. The more than $35,000 in attorney's fees that Drumm requests for discovery is unreasonable, as is Morningstar's position that no such fees be granted. Morningstar, acknowledging the relevance of deposition questions to Kimura and Resendes regarding their background and roles at Morningstar, proposes that five percent in deposition-related fees be recoverable. Although that figure fails to account for the discovery's use in rebuttal, the Court agrees that

---

[11] For example, according to Drumm, Kimura stated in deposition that Morningstar does not track its employees' time off, which demonstrated that Morningstar's effort at trial to tally Drumm's time off by the hour was inconsistent with its own policy. In addition, Drumm's counsel appears to have identified through document review a September 30, 2007 sales report that gave Drumm a high performance rating, which he relied on to counter Morningstar's contention that Drumm was not working.

14

only a small fraction of the requested attorney's fees for depositions and document review is appropriate. The Court will award 14 percent of the $35,707.50 in discovery-related attorney's fees requested by Drumm, which amounts to $4,999.05.

Drumm's motion for attorney's fees is therefore GRANTED IN PART and DENIED IN PART. The Court awards a total of $50,121.55 in attorney's fees to Drumm: $43,360 for trial, $1,762.50 for the preparation of case management and pretrial conference materials, and $4,999.05 for discovery.

## III. Morningstar's Motion for Attorney'sFees

Unlike Drumm's motion for attorney's fees based on his unpaid wage claim, the Court is under no obligation to award attorney's fees to Morningstar based on the FEHA claim. To the contrary, attorney's fees to the prevailing defendant in such a claim are only appropriate where the action was "unreasonable, frivolous, meritless or vexatious." *Bond*, 50 Cal. App. 4th at 921-22. Drumm's discrimination claim, although unsuccessful, was none of those things.

Drumm offered evidence to show that Morningstar's facially nondiscriminatory reason for his termination – requests from two clients that Drumm be removed from their accounts – was pretextual. For example, Drumm showed that his overall sales numbers and performance reviews were favorable, and he raised disputed issues of fact as to whether certain problems raised by clients were his responsibility. Although the Court found that Drumm's evidence of pretext was not sufficiently "specific" or "substantial" to survive summary judgment, Order Granting in Part and Denying in Part Def.'s Mot. for Summ. J. (Dkt. 61) at 10, the evidence rose above the level of frivolity that would warrant an award of attorney's fees to Morningstar. Morningstar's motion is DENIED.

## IV. Costs

Each party filed a bill of costs, and objected to the opposing party's bill of costs.

15

Federal Rule of Civil Procedure 54(d)(1) provides that "costs – other than attorney's fees – should be allowed to the prevailing party," unless "a federal statute, these rules, or a court order provides otherwise." "An award of standard costs in federal district court is normally governed by Federal Rule of Civil Procedure 54(d), even in diversity cases." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003).

Both Drumm and Morningstar claim to be the "prevailing party" for purposes of the taxing of costs. "Courts consistently confirm that '[a] party in whose favor judgment is rendered is generally the prevailing party for purposes of awarding costs under Rule 54(d).'" *San Diego Police Officers' Ass'n v. San Diego City Employees Ret. Sys.*, 568 F.3d 725, 741 (9th Cir. 2009) (quoting *d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 896 (9th Cir. 1977)). It is not "necessary for a party to prevail on all of its claims to be found the prevailing party." *Id.*; *see, e.g.*, *K-2 Ski Co. v. Head Ski Co.*, 506 F.2d 471, 477 (9th Cir. 1974) (finding plaintiff that prevailed on only two of twelve alleged trade secrets to be prevailing party). Based on Drumm's success on the sabbatical claim, the Court concludes that Drumm is the prevailing party under Rule 54(d).

Drumm contends that costs should be governed by state law, based on the longstanding rule that "federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). He relies on *Clausen v. M/V New Carissa*, in which the Ninth Circuit affirmed the application of Oregon law for costs after finding a "state *damages provision* that permits prevailing plaintiffs under the Oil Spill Act to recover 'costs of any kind' as *one element of its compensatory damages*" to be "substantive in nature." 339 F.3d 1049, 1064-65 (9th Cir. 2003) (emphasis in original). Unlike Oregon's Oil Spill Act, costs are not included as an element of *damages* for an unpaid wage claim under California law. Rather, section 218.5 of the California Labor Code simply requires a court to "award reasonable attorney's fees and costs to the prevailing party." Since the awarding of costs here is procedural, not substantive, federal law governs.

16

1       Morningstar objects to the $12,888.80 claimed for deposition expenses. "Deposition
2 costs are taxable if they are reasonably necessary for trial." *Evanow v. M/V Neptune*, 163
3 F.3d 1108, 1118 (9th Cir. 1998). Only the depositions of Drumm, Melia Kimura, and Connie
4 Resendes meet that standard. Drumm may not recover costs for any other depositions.

5       Pursuant to Civil Local Rule 54, the Clerk of the Court SHALL tax costs in
6 accordance with this Order.

7

8 **CONCLUSION**

9       For the foregoing reasons, Drumm's 59(e) motion is GRANTED IN PART and
10 DENIED IN PART. In light of the clear error in the jury's calculation, the judgment will be
11 amended to correct the waiting time penalty to $25,557.69. Drumm's motion for attorney's
12 fees is GRANTED IN PART and DENIED IN PART, and the Court awards $50,121.55 in
13 attorney's fees to Drumm. Morningstar's motion for attorney's fees is DENIED.

14

15 **IT IS SO ORDERED.**

16

17 Dated: 2/26/10

18       THELTON E. HENDERSON, JUDGE
      UNITED STATES DISTRICT COURT